**FILED**

APR 23 2018

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK



BR

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-cr-20

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL INFORMATION |
| ) | Fed. R. Crim. P. 7 |
| JAMES SCOTT WIGGINS ) | |

THE UNITED STATES ATTORNEY CHARGES:

## COUNT ONE

### INTRODUCTORY STATEMENT

1.   JAMES SCOTT WIGGINS (hereinafter referred to as "SCOTT WIGGINS"), defendant herein, individually and by and through various corporate and partnership entities, and other persons worked together to defraud the United States of America through the filing of false insurance claims and false crop disaster relief claims ultimately reimbursed by the United States Department of Agriculture, to make material false statements in connection with the Federal Crop Insurance program, and to structure transactions to evade reporting requirements and other financial transactions to conceal the fraud.  The false statements were then sent by mail or wire.

## STATUTORY AND REGULATORY BACKGROUND

2.    In 1938, Congress passed the Federal Crop Insurance Act (hereinafter referred to as the "Act"), 7 U.S.C. § 1501 et seq., in order to promote the economic stability of agriculture in the United States through, in part, a system of crop insurance.

3.    In furtherance of this purpose, Congress established the Federal Crop Insurance Corporation (hereinafter referred to as "FCIC"), 7 U.S.C. § 1503, which was authorized to insure crop losses due to drought, flood, or other natural disaster, as determined by the Secretary of United States Department of Agriculture (hereinafter referred to as "USDA"). 7 U.S.C. § 1508. Tobacco, wheat, corn, and soybeans were among the crops for which insurance was authorized under the Act.  7 U.S.C. § 1518.

4.    The Act only authorized the extension of insurance coverage to producers, that is, a person or entity with an insurable interest in a crop as an owner-operator, landlord, tenant, or sharecropper. 7 U.S.C. § 1520. Farmers are producers. A crop insurance policy under the Act provided payments to a farmer when bad weather (freeze, drought, etc.) or other such unavoidable events caused the harvest for the farm to be less than the amount specified in the insurance contract, or written policy agreement. The insurance contract or written policy agreement, and premiums of coverage, are based on four or more years of production records

2

for a particular crop grown by a farmer on a specific farm designated by its unique Farm Serial Number ("FSN").

5. By delegated authority, the Secretary of USDA issued regulations governing the federal crop insurance program. 7 C.F.R. § 400 et seq.

6. Since 2004, if they elected to participate in the federal crop insurance program, farmers have been required to take out insurance policies prior to the growing season. Farmers generally do not pay his policy premiums until the growing season has ended and when the farmer knows whether or not his yield (i.e., the amount of crop harvested from a specific farm) justified an insurance claim. If the farmer makes a claim under his crop insurance policy, then the insurance premium is typically deducted from the amount paid out to the farmer under the policy.

7. Under the crop insurance program, eligible farmers are paid benefits based, in part, on factual representations as to the amount of crop harvested and sold, and the cause of loss.

8. Under the crop insurance program, the insurance coverage available, also known as the guarantee, is based upon the farmer's actual production history for the crop if the farmer has produced that crop on that farm during each of the 4 years immediately preceding the year for which insurance is sought. 7 U.S.C. § 1508. If a farmer has produced the crop for more than 4 years, the

3

guarantee will be based upon production history of those preceding years but no more than 10 years of production history will be used. 7 U.S.C. § 1508.

9. A new producer is a person who has not actively engaged in farming of the crop sought to be insured in the county for more than two years. 7 C.F.R. § 400.52.

10. Because new producers by definition do not have an actual production history, new producers are assigned a production yield by the Secretary, as delegated to the FCIC. 7 U.S.C. § 1508. New producers are given an estimated production yield based upon the county average production for the crop for the past 4 years. See 7 C.F.R. §§ 400.52(m), 400.52(p) and 400.55(b)(6).

11. The regulations exclude from the definition of new producer any entity which includes individuals with more than two years of actual production history. 7 C.F.R. § 400.52.

12. As statutorily mandated, the Secretary of USDA established the Risk Management Agency (hereinafter referred to as "RMA"), an agency of the USDA, to supervise the FCIC and to administer all programs authorized under the Act. 7 U.S.C. § 6933.

13. By 1986, most crop insurance was sold through private insurance companies contracting with RMA. USDA reimbursed the private insurance companies for any claims paid in connection with crop losses covered by the federal crop insurance program.

4

14.     In order to qualify for federal crop insurance, a producer must have a bona fide insurable interest in a crop as an owner-operator, landlord, tenant, or sharecropper.  7 U.S.C. § 1520.  The term does not include an organization that does not grow crops but merely receives them from producers for handling.

15.     The U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act, 2007 (Pub. L. 110-28), as amended, authorized the Secretary to provide disaster assistance to producers who suffered crop losses because of adverse weather conditions in 2005, 2006, and 2007.  Regulations govern the Crop Disaster Program (hereinafter referred to as "CDP").  See 7 C.F.R. § 760 et. seq.

16.     The Farm Service Agency (hereinafter referred to as "FSA") administered the 2005-2007 CDP.  7 C.F.R. § 760.801.  CDP provided assistance for FCIC insurable crops including flue-cured tobacco, wheat, corn, and soybeans.  7 C.F.R. § 760.802.  A participant on a farm is eligible for assistance under this section with respect to losses to an insurance commodity if the participant obtained a policy or plan of insurance under the Federal Crop Insurance Act for the crop incurring the losses.  7 C.F.R. § 760.806(a)(1).  Where available and determined accurate by FSA, RMA loss records are used for insured crops in evaluating applications for CDP benefits.  7 C.F.R. § 760.812.  The 2005,

5

2006, and 2007, CDP application had to be submitted on a completed FSA-840, or such other form designated for such application by FSA, in the FSA county office in the participant's control county office before the close of business on a specified date. 7 C.F.R. § 760.804(a). The participant applying for benefits under the CDP must certify the accuracy and truthfulness of the information provided in the application as well as any documentation filed with or in support of the application. 7 C.F.R. § 760.804(c).

FACTUAL BACKGROUND

At all times relevant hereto,

17. James T. Wiggins, SCOTT WIGGINS, and an individual hereinafter referred to as "B.W." (now deceased), were residents of LaGrange, North Carolina.

18. James T. Wiggins owned and rented farmland in Lenoir, Wayne and Greene Counties, North Carolina, and produced, among other crops, tobacco, corn, wheat, and soybeans. As such, James T. Wiggins had an insurable interest in his tobacco, corn, wheat, and soybean crops.

19. SCOTT WIGGINS and "B.W." worked with James T. Wiggins on the various farms.

20. Wiggins Farms, Inc. (hereinafter referred to as "Wiggins Farms") was a North Carolina corporation, established in February 1993, for the purpose of farming. James T. Wiggins was the

President of Wiggins Farms. SCOTT WIGGINS and "B.W." claimed a 20% interest each in Wiggins Farms.

21. Wiggins Farms was "a multiple generational family farm specializing in managing commercial swine and poultry growing contracts, as well as leasing farm equipment for crop production in Lenoir and Wayne Counties." Disclosure Statement at 7, *In re Wiggins Farms, Inc.*, No. 12-02651-8-RDD (Bankr. E.D.N.C. Aug. 24, 2012).

22. James T. Wiggins managed all of the day-to-day farming operations of Wiggins Farms. James T. Wiggins also owned all of the crops, raised the agricultural crops, and put the crops in a condition for the market. James T. Wiggins retained all of the risk of production.

23. "M.L.W" was the Secretary for Wiggins Farms, Inc. "M.L.W." also performed bookkeeping services for Wiggins Farms, Inc. "M.L.W." did not have an insurable interest in any of the crops harvested by the Defendants.

24. JSBF Partnership was a North Carolina partnership consisting of three equal partners: James T. Wiggins, SCOTT WIGGINS, and "B.W.". JSBF Partnership leased farm equipment from Wiggins Farm, and operated in Lenoir, Wayne, and Greene Counties.

25. LA Family Farms Partners was a North Carolina limited partnership consisting of two equal partners: SCOTT WIGGINS and

7

"B.W." LA Family Farms Partners owned and operated hog and turkey houses in Wayne and Lenoir counties.

26. DBW Wiggins was a nominee name used by James T. Wiggins, SCOTT WIGGINS, and "B.W.".

27. Walstonburg Milling Co. was formed in 1948, originally as a private company, established for purpose of farm product warehouse and storage and engaged in the business of buying and selling grain. In April 2013, Walstonburg Milling Co. LLC was established.

28. Murphy-Brown LLC was a Delaware limited liability corporation, established in February 2001, for the purpose of buying grain.

29. Goldsboro Milling was a North Carolina corporation, established in September 1916, for the purpose of buying and selling grain.

30. New Hope Milling, Inc. was a North Carolina corporation, established in July 1960, for the purpose of buying and selling grain.

31. Select Tobacco, LLC was a North Carolina limited liability company, established in August 2009, with principal offices located in Angier, North Carolina. Select Tobacco, LLC was engaged in the business of buying and selling

8

tobacco. Select Tobacco, LLC was converted to Select Tobacco of Harnett County, LLC in June 2010.

32. RC Commodities was a North Carolina corporation, established in January 2011, for the purpose of wholesale tobacco sales.

33. Coharie Hog Farm was a North Carolina corporation, established in November 2000, for the purpose of swine farming. Coharie Hog Farm was dissolved in January 2011.

34. Sharp Farms Inc. was a North Carolina corporation, established in November 1996, for the stated purpose of farming operations, including the purchase of cured tobacco.

35. Downeast Guide Service, Inc. was a North Carolina corporation, established in 1994, for the stated purpose of domestic and international hunting, fishing, and river tours.

36. Squires Brothers Farms was a South Carolina business engaged in farming operations, including the purchase of cured tobacco.

37. MC Farms was a farming operation located in Seven Springs, North Carolina.

38. Wiggins Farms rented cropland from MC Farms and McFarms Equipment Trucks & Salvage Inc. ("McF.E.T.S.").

9

39. McF.E.T.S. was a North Carolina corporation, established in 1991, for the stated purpose of buying and selling used farm equipment, trucks, and salvage.

40. Phillip Morris U.S.A, a New York corporation established in 1902, was a wholly-owned subsidiary of Altria Group, a Virginia corporation established in 2003. Phillip Morris manufactured and sold cigarettes world-wide.

41. Phillip Morris International ("PMI") was a Virginia corporation, established in 1967, for the purpose of engaging in the international purchase, processing and production of tobacco products.

42. Universal Leaf North America U.S., Inc. was a subsidiary of Universal Leaf Tobacco Company, Inc., which is a subsidiary of Universal Corporation, a leaf tobacco merchant and processor founded in 1918, with headquarters in Richmond, Virginia. Universal Corporation was engaged primarily in the business of procuring, processing, packing, and supplying of flue-cured and burley tobacco to manufacturers of tobacco products.

43. Universal Leaf North America U.S., Inc., a North Carolina corporation, maintained business offices in Nashville, North Carolina.

44. United Tobacco Company, LLC. ("UTC") was a North Carolina corporation established in 1997 with its principal place

10

of business in Wilson, North Carolina. UTC was engaged primarily in the business of procuring, processing, packing, and supplying of flue-cured and burley tobacco to manufacturers of tobacco products.

45. Safe Marketing, LLC, was a South Carolina corporation, established in February 2000, and was a tobacco receiving station for R. J. Reynolds Tobacco Company.

46. R. J. Reynolds Tobacco Company was established in 1875 for the purpose of, among other things, purchasing flue-cured tobacco from sources for processing and production of tobacco products. R.J. Reynolds Tobacco Company was an indirect wholly-owned subsidiary of Reynolds American Inc. R.J. Reynolds Tobacco Company was the second largest tobacco company in the United States.

47. The Hallmart Agency, Inc. was a North Carolina corporation, established in September 1990, for the purpose of selling insurance, including multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. The Hallmart Agency, Inc.'s principal place of business was located at 3621 Airport Boulevard, Wilson, North Carolina. The Hallmart Agency, Inc. also secured a license to operate a check-cashing business. The check-cashing business was

11

operated from the same business location as the insurance agency. The Hallmart Agency, Inc. was dissolved, effective October 2007.

48. Gilman Insurance Services, Inc. was a North Carolina corporation, established in August 2007, for the purpose of selling insurance, including multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. Gilman Insurance Services, Inc.'s principal place of business was located at 3904 Airport Drive NW # A, Wilson, North Carolina.

49. ARMtech Insurance Services was a subsidiary of American Agri-Business Insurance Company of Lubbock Texas, engaged in, among other things, the business of providing crop insurance services to the agriculture community. American Agri-Business Insurance Company, acting through ARMtech Insurance Services, contracted with the RMA to provide federally-backed multi-peril crop insurance policies. ARMtech Insurance Services executed a Standard Reinsurance Agreement with RMA. ARMtech Insurance Services also offered privately funded crop-hail insurance policies.

50. ARMtech Insurance Services contracted The Hallmart Agency, Inc., to act as a local independent insurance agent for multi-peril crop insurance policies and crop-hail insurance policies.

51. Rural Community Insurance Services (hereinafter referred to as "RCIS") was a subsidiary of the Rural Community Insurance Company of Anoka, Minnesota, engaged in, among other things, the business of providing crop insurance services to the agriculture community. RCIS contracted with the RMA to provide federally-backed multi-peril crop insurance policies. RCIS executed a Standard Reinsurance Agreement with RMA.

52. RCIS contracted The Hallmart Agency, Inc. and Gilman Insurance Services, Inc., to act as local independent insurance agents for multi-peril crop insurance policies.

53. NAU Country Insurance Company (hereinafter referred to as "NAU"), headquartered in Ramsey, Minnesota, engaged in, among other things, the business of providing crop insurance services to the agriculture community. NAU contracted with the RMA to provide federally-backed multi-peril crop insurance policies. RCIS executed a Standard Reinsurance Agreement with RMA.

54. NAU contracted The Hallmart Agency, Inc. and Gilman Insurance Services, Inc., to act as a local independent insurance agents for multi-peril crop insurance policies.

55. FCIC was a government-owned corporation, within the United States Department of Agriculture (hereinafter referred to as "USDA"), a department of the executive branch of the United States.

13

56. The FCIC operated through the Risk Management Agency, (RMA), which was also an agency of the USDA.

57. The FSA was an agency within USDA.

58. During the 2007 crop year, James T. Wiggins, SCOTT WIGGINS, and "B.W.", had federal crop insurance through The Hallmart Agency, Inc., who acted as the local agent for RCIS, NAU, and ARMTech. The insurance was written in the names of Wiggins Farms, JSBF Partnership, and their names individually.

59. During the 2007, 2008, 2009, and 2010 crop years, James T. Wiggins, SCOTT WIGGINS, and "B.W." had federal crop insurance through Gilman Insurance Services, Inc., who acted as the local agent for RCIS, NAU and ARMTech. The insurance was written in the names of Wiggins Farms, JSBF Partnership, and their names individually.

60. In 2011, SCOTT WIGGINS was the regional winner for the 2011 Corn Yield Contest sponsored by the National Corn Growers Association. SCOTT WIGGINS declared a 2011 corn production of 247.60 bushels per acre in Lenoir County.

61. In the same competition described in the preceding paragraph, James T. Wiggins declared a 2011 corn production of 236.82 bushels per acre in Lenoir County.

62. Between 2007 and 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W." filed false claims for indemnity payments in excess of

14

$5.6 million and aided and abetted the filing of false claims on behalf of "R.W." in the amount of $506,636.00.

63. Between 2007 and 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W." aided and abetted the filing of false federal tax returns by "R.W." in the amount of $792,993.18.

## THE CONSPIRACY

64. Beginning in or about 2007, the exact date being unknown, and continuing up to and including the date of this Criminal Information, within the Eastern District of North Carolina and elsewhere, JAMES SCOTT WIGGINS, defendant herein, did combine, conspire, confederate and agree with other persons both known and unknown to the United States Attorney to commit offenses against the United States, to wit:

a. to knowingly make false statements and reports for the purpose of influencing in any way the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, insurance agreement, application for insurance and a guarantee, and any change or extension of any of the same, by renewal, deferment of action and otherwise, in violation of Title 18, United States Code, Section 1014;

b. in a matter within the jurisdiction of the FCIC, an agency within the United States Department of Agriculture, a department of the executive branch of the United States, in connection with the Federal Crop Insurance Program, to knowingly and willfully: (i) falsify, conceal, and cover up by any trick, scheme and devise, a material fact; and (ii) make materially false, fictitious, and fraudulent statements and presentations; and (iii) make and use any false writing and document knowing

15

the same to contain materially false, fictitious, and fraudulent statements, in violation of Title 18, United States Code, Section 1001;

c. having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, to place in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service, and to knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of Title 18, United States Code, Section 1341;

d. having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted by means of wire in interstate commerce, that is, by electronic mail and facsimile, writings, signals and sounds, in violation of Title 18, United States Code, Section 1343;

e. for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or record-keeping requirements imposed by any order issued under section 5326, or the record-keeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508, . . . structured and assisted in structuring, and attempted to structure and assisted in structuring of transactions with one or more domestic financial institutions, in violation of Title 31, United States Code, Section 5324(a)(3); and

f. to willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United

16

States of America by filing and causing to be filed
with the Director, Internal Revenue Service Center,
a false and fraudulent U.S. Individual Income Tax
Return, in violation of Title 26, United States Code,
7201.

## PURPOSE OF THE CONSPIRACY

65.  It was the purpose of the conspiracy to profit through
the filing of false and fictitious federal crop insurance and
federal income tax claims, the sale of unreported tobacco and
unreported grain, to hide the criminal proceeds through payments
in nominee and real names, and to obtain a more favorable insurance
guarantee.

## MANNER AND MEANS

66.  In furtherance of the conspiracy, SCOTT WIGGINS,
defendant herein, along with others, employed the following manner
and means:

a.   James T. Wiggins, on behalf of his farming
operations, and other co-conspiring farmers obtained or caused to
be obtained federal crop insurance policies for their tobacco and
grain crops.

b.   James T. Wiggins, SCOTT WIGGINS, and "B.W." falsely
represented to FCIC, through Application for Federal Crop
Insurance and Acreage Reports, that they were each operating
separate and distinct farms; thereby avoiding payment limitations
for crop disaster and other USDA programs, and obtaining additional

17

crop insurance units to shift yield production. In fact, James T. Wiggins, SCOTT WIGGINS, and "B.W." operated together through a single farm operation, that is, Wiggins Farms.

c. James T. Wiggins, SCOTT WIGGINS, "B.W.", and other co-conspiring farmers then filed false crop insurance claims, and hid some or all of their tobacco and/or grain production by selling it in nominee names or for cash to a co-conspiring tobacco warehouseman and grain dealers.

d. James T. Wiggins, SCOTT WIGGINS, "B.W.", and the other co-conspiring farmers profited under the scheme because they were paid twice for each pound of tobacco or bushel of grain: once through the false crop insurance claim, and also through the sale of the unreported ("hidden") tobacco and/or grain.

e. Other co-conspirators profited through other aspects of the double sales scheme, including the original insurance commission, collecting a share of the hidden tobacco's second sale, and profit margins derived from subsequent sales to larger tobacco companies.

f. The co-conspiring tobacco warehouses and grain dealers then paid the co-conspiring farmers, including James T. Wiggins, SCOTT WIGGINS, and "B.W.", with checks made payable in real entities or persons other than themselves or their business entities, including but not limited to the following individuals

18

with initials: "J.C.," "T.S.," "J.B.," "M.E.," "R.G." and "S.E." Some of the business entities used by the conspirators included JBS Farms, LA Farms, JSBS Farms, McFarms, McF.E.T.S. and Downeast Guide Service, Inc.

g. James T. Wiggins, SCOTT WIGGINS, "B.W.", and other co-conspiring farmers who sold the unreported ("hidden") tobacco and/or unreported ("hidden") grain misrepresented the truth of farm operations in a variety of documents that were submitted to the private insurance entities. For example, documents, including applications, reports of actual production history, acreage reports, and claim forms made and submitted in support of crop insurance coverage and claims, failed to truthfully show who had an insurable interest and who really suffered a loss and the extent of that loss.

h. In some instances, the conspirators, including James T. Wiggins, SCOTT WIGGINS, and "B.W.", falsely allocated loss and harvest amounts on Production and Yield Reporting Forms and Production Worksheet reports. That is, to fraudulently establish losses on some insured farms, the co-conspirators engaged in a practice of "yield shifting" that is, falsely reporting that the farmer had harvested very small quantities from the insured farm for which a claim was being filed and falsely

19

reporting much larger production per acre from other farms or other entities.

i.   A co-conspirator would either mail or caused to be mailed, through the U.S. mail, the insurance claim forms, or would submit the claim forms by electronic mail.

j.   Co-conspiring farmers received payment on the claims through their insurance company and/or insurance agency which would be reimbursed for the payments by USDA.

k.   In an effort to increase guarantees under the federal crop insurance program, James T. Wiggins switched insurance companies and falsely claimed to be a new producer. By doing so, James T. Wiggins was able to obtain a "new producer" guarantee.

l.   By assisting other farmers in hiding production, James T. Wiggins, SCOTT WIGGINS, and "B.W.", aided and abetted another farmer from reporting such production to FCIC and the income from the sale of the production to the United States Department of Treasury Internal Revenue Service on his individual tax returns.

OVERT ACTS

67.   In furtherance of the conspiracy, and to effect the object thereof, there were committed by at least one of the co-

20

conspirators in the Eastern District of North Carolina at least one of the following overt acts, among others:

### YIELD-SHIFTING AND HIDDEN PRODUCTION SCHEME

a.　2007 Wheat Crop – Lenoir County

i.　On or about June 28, 2007, "B.W." submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 189.2 bushels.

ii.　Between on or about July 2, 2007, and July 5, 2007, "B.W." caused to be issued an insurance indemnity payment in the total amount of $33,897.00 which was reimbursed by RMA.

iii.　On or about July 9, 2007, the conspirators caused to be deposited a $25,688.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.　On or about July 10, 2007, the conspirators caused to be deposited the $8,209.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

v.　On June 28, 2007, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 201.4 bushels.

vi.　Between on or about June 29, 2007, and July 5, 2007, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $28,283.00 which was reimbursed by RMA.

21

vii.    On or about July 10, 2007, the conspirators caused to be deposited the $6,847.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

viii.    On or about July 11, 2007, the conspirators caused to be deposited a $17,491 insurance indemnity check into the Wiggins Farms' account at Southern bank.

ix.    On or about June 28, 2007, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 242.6 bushels.

x.    Between on or about June 29, 2007, and July 5, 2007, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the total amount of $36,917.00.

xi.    On or about July 10, 2007, the conspirators caused to be deposited an $8,940.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

xii.    On or about July 11, 2007, the conspirators caused to be deposited a $27,977.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

b.  2007 Wheat Crop - Wayne County

i.   On or about June 28, 2007, "B.W." submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 121.1 bushels.

ii.   Between on or about June 29, 2007, and July 5, 2007, "B.W." caused to be issued a total insurance indemnity payment of $4,495.00 which was reimbursed by RMA.

iii.   On or about July 10, 2007, the conspirators caused to be deposited a $1,089.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.   On or about July 11, 2007, the conspirators caused to be deposited a $73.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

v.   On or about June 28, 2007, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 45.0 bushels.

vi.   Between on or about June 29, 2007, and July 5, 2007, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the amount total amount of $6,218.00.

vii.     On or about July 10, 2007, the conspirators caused to be deposited a $1,506.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

viii.     On or about July 11, 2007, the conspirators caused to be deposited a $741.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

ix.     On or about June 28, 2007, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 60.5 bushels.

x.     Between on or about June 29, 2007, and July 5, 2007, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the amount total amount of $10,855.00.

xi.     On or about July 10, 2007, the conspirators caused to be deposited a $2,629.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

xii.     On or about July 11, 2007, the conspirators caused to be deposited an $8,226.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

c.     2007 Wheat Crop Production – Sales v. Reported

i.     Between June 7, 2007, and June 21, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W.", sold more than 26,747.73 bushels of wheat to Goldsboro Milling and Coharie Hog Farm.  Of

the wheat sold, more than 24,327.2 bushels of the wheat were sold in the name of "M.L.W."

ii.     On or about June 28, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross wheat production of 859.8 bushels from 753.3 acres of farmland.

d.     2007 Corn Crop - Lenoir County

i.     On or about November 15, 2007, "B.W." submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 10,755.1 bushels.

ii.     On or about November 15, 2007, "B.W." caused to be paid an insurance indemnity payment in the total amount of $18,762.00 which was reimbursed by RMA.

iii.     On or about November 27, 2007, the conspirators caused to be deposited a $6,125.99 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.     On or about October 18, 2007, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 7,265.5 bushels.

v.     On or about October 22, 2007, SCOTT WIGGINS caused to be paid an insurance indemnity payment in the total amount of $68,923.00 which was reimbursed by RMA.

25

vi.     On or about October 31, 2007, the conspirators caused to be deposited a $47,072.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

e.  2007 Corn Crop – Wayne County

i.     On or about October 18, 2007, "B.W." submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 2,055.4 bushels.

ii.     On or about October 22, 2007, "B.W." caused to be paid an insurance indemnity payment in the total amount of $11,775.00 which was reimbursed by RMA.

iii.     On or about October 31, 2007, the conspirators caused to be deposited a $6,036.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.     On or about November 3, 2007, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 2,332.9 bushels.

v.     On or about November 13, 2007, SCOTT WIGGINS caused to be paid an insurance indemnity payment in the total amount of $16,593.00 which was reimbursed by RMA.

vi.     On or about November 12, 2007, the conspirators caused to be deposited a $9,799.12 insurance indemnity check into the Wiggins Farms' account at Southern bank.

f.   2007 Corn Crop Production – Sales v. Reported

   i.   Between August 22, 2007, and October 17, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 213,143.15 bushels of corn to Coharie Hog Farm Inc. and Goldsboro Milling Company.  Of the corn sold, 49,914 bushels of corn were sold in the name of "M.L.W."

   ii.   Between October 18, 2007 and April 12, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross corn production of 138,477.5 bushels from 1,313.7 acres of farmland.

g.   2007 Tobacco Crop - Lenoir County

   i.   On or about October 18, 2007, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 25,090 pounds.

   ii.   On or about October 18, 2007, James T. Wiggins caused an insurance indemnity payment to be issued to Wiggins Farms, Inc. in the total amount of $50,776.00 which was reimbursed by RMA.

   iii.   On or about October 26, 2007, the conspirators caused to be deposited a $40,121.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

27

iv.    On or about October 23, 2007, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 47,206 pounds.

v.    On or about October 25, 2007, SCOTT WIGGINS caused an insurance indemnity payment to be issued in the total amount of $121,507.00 which was reimbursed by RMA.

vi.    On or about October 31, 2007, the conspirators caused to be deposited a $121,507.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

h.    2007 Tobacco Crop Production - Sales v. Reported

i.    Between August 15, 2007, and October 23, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 553,019 pounds of tobacco to Phillip Morris USA.

ii.    Between October 18, 2007, and April 12, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross tobacco production of 346,289 pounds over 227.62 acres of farmland.

i.    2007 Soybean Crop - Lenoir County

i.    On or about December 8, 2007, "B.W." submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 1,137.6 bushels.

ii.    On or about December 18, 2007, "B.W." caused to be paid an insurance indemnity payment in the total amount of $18,498.00 which was reimbursed by RMA.

iii.    On or about January 2, 2008, the conspirators caused to be deposited a $18,498.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.    On or about December 10, 2007, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 740.0 bushels.

v.    On or about December 12, 2007, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $24,259.00 which was reimbursed by RMA.

vi.    On or about January 2, 2008, the conspirators caused to be deposited a $24,259.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

vii.    On or about December 8, 2007, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 643.4 bushels.

viii.    On or about December 26, 2007, James T. Wiggins, on behalf of Wiggins Farms, caused to be paid an insurance indemnity payment in the total amount of $22,900.00 which was reimbursed by RMA.

ix.     On or about January 10, 2008, the conspirators caused to be deposited a $22,900.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

j.   2007 Soybean Crop - Wayne *County*

i.     On or about December 20, 2007, "B.W." submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 115.0 bushels.

ii.     On or about January 8, 2008, "B.W." caused to be paid an insurance indemnity payment in the total amount of $5,461.00 which was reimbursed by RMA.

iii.     The co-conspirators caused the check to be cashed on or about January 18, 2008.

iv.     On or about December 8, 2007, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 210.7 bushels.

v.     On or about December 12, 2007, SCOTT WIGGINS was issued an insurance indemnity payment in the total amount of $11,039.00 which was reimbursed by RMA.

vi.     On or about December 19, 2007, the conspirators caused to be deposited $11,039.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

vii.     On or about December 8, 2007, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance

claim in Wayne County reporting gross soybean sales in the amount of 123.8 bushels.

viii. On or about December 17, 2007, James T. Wiggins, on behalf of Wiggins Farms, caused to be paid an insurance indemnity payment in the total amount of $7,835.00 which was reimbursed by RMA.

ix. The co-conspirators caused the check to be deposited on or about December 26, 2007.

k. 2007 *Soybean Crop Production – Sales v. Reported*

i. Between November 9, 2007, and November 26, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 14,039.05 bushels of soybeans to Coharie Hog Farm. Of the soybeans sold, more than 8,036.36 bushels of the soybeans were sold in the name of "M.L.W."

ii. Between December 8, 2007, and December 12, 2007, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross soybean production of 2,970.5 bushels from 757.2 acres of farmland.

l. 2008 *Wheat* Crop – Lenoir County

i. On July 9, 2008, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 3,408.8 bushels.

31

ii.     Between on or about July 10, 2008, and July 11, 2008, SCOTT WIGGINS caused to be issued insurance indemnity payments in the total amount of $81,650.00 which was reimbursed by RMA.

iii.     On or about July 16, 2008, the conspirators applied $67,732.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

iv.     On or about July 24, 2008, the conspirators caused to be cashed an insurance indemnity payment of $1,026.00.

v.     On or about July 9, 2008, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 2,757.6 bushels.

vi.     On or about July 10, 2008, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the total amount of $44,994.00.

vii.     On or about July 16, 2008, the conspirators applied $38,710.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

m.     2008 *Wheat* Crop - *Wayne County*

i.     On or about July 9, 2008, "B.W." submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 2,583.0 bushels.

ii.     On or about July 10, 2008, "B.W." caused to be issued an insurance indemnity payment in the total amount of $5,024.00.

iii.     On or about July 16, 2008, the conspirators applied $1,579.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

iv.     On or about July 9, 2008, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 952.6 bushels.

v.     On or about July 10, 2008, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $23,806.00 which was reimbursed by RMA.

vi.     On or about July 16, 2008, the conspirators applied $23,806.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

n.     2008 Wheat Crop Production - Sales v. Reported

i.     Between June 19, 2008, and June 27, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 35,304.56 bushels of wheat to Coharie Hog Farm and New Hope Milling. Of the wheat sold, 21,140.79 bushels of the wheat were sold in the name of "DBW WIGGINS."

33

ii.     On or about July 9, 2008, James T. Wiggins,
SCOTT WIGGINS, and "B.W." reported to RMA a total gross wheat
production of 14,922.8 bushels from 970 acres of farmland.

o.     2008 Corn Crop - Lenoir County

i.     On or about October 22, 2008, SCOTT WIGGINS
submitted a crop insurance claim in Lenoir County reporting gross
corn sales in the amount of 1,702.4 bushels.

ii.     Between on or about October 23, 2008, and
January 13, 2009, SCOTT WIGGINS caused to be issued an insurance
indemnity payment in the total amount of $180,178.00 which was
reimbursed by RMA.

iii.     On or about November 5, 2008, the conspirators
applied $139,130.00 of the October 23, 2007, insurance indemnity
payment against the Wiggins Farms' loan account at AgCarolina
Financial.

iv.     On or about January 30, 2009, the conspirators
applied $222.00 of the insurance indemnity payment against the
Wiggins Farms' loan account at AgCarolina Financial.

p.     2008 Corn Crop - Wayne County

i.     On or about October 22, 2008, SCOTT WIGGINS
submitted a crop insurance claim in Wayne County reporting gross
corn sales in the amount of 1,390.0 bushels.

34

ii.   On or about October 23, 2008, SCOTT WIGGINS caused to be paid an insurance indemnity payment in the total amount of $189,817.00 which was reimbursed by RMA.

iii.   On or about November 5, 2008, the conspirators applied the $189,817.00 insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

q.   2008 Corn Crop Production – Sales v. Reported

i.   Between September 4, 2008, and October 3, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 130,433.31 bushels of corn to Goldsboro Milling, Walstonburg Milling, and Coharie Hog Farm.

ii.   Of the corn sold, approximately 55,605.62 bushels of the corn were sold in the name of "J.C.". The checks for these sales were deposited into the bank account controlled by "M.L.W."

iii.   In addition, of the corn sold, approximately 3,683.58 bushels of corn were sold in the name of Downeast Guide Services. The checks for these sales were deposited into Downeast Guide Services' bank account and were used by the co-conspirators to pay for a hunting trip to Argentina.

iv.   Between on or about October 22, 2008, and March 22, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W."

reported to RMA a total gross corn production of 53,761.5 bushels from 1,330.4 acres of farmland.

    r.   <u>2008 Tobacco Crop - Lenoir County</u>

    i.   On or about September 29, 2008, "B.W." submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 91,770 pounds.

    ii.   On or about October 2, 2008, "B.W." caused to be issued an insurance indemnity payment in the total amount of $64,271.00.

    iii.   On or about October 8, 2008, the conspirators applied $64,271.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

    iv.   On or about October 1, 2008, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 184,279 pounds.

    v.   On or about October 3, 2008, SCOTT WIGGINS, caused to be paid an insurance indemnity payment in the total amount of $38,874.00, which was applied by the insurance company to offset the premium owed by the producer.

    vi.   On or about September 29, 2008, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 8,314 pounds.

36

vii.    On or about October 2, 2008, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the total amount of $55,562.00.

viii.    On or about October 8, 2008, the conspirators applied $35,178.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

s.    2008 Tobacco Crop - Wayne County

i.    On or about October 1, 2008, "B.W." submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 33,480 pounds.

ii.    On or about October 30, 2008, "B.W." was issued an insurance indemnity payment in the amount of $232,029.00.

iii.    On or about November 5, 2008, the conspirators applied $211,161.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

iv.    On or about September 29, 2008, JAMES T WIGGINS, JR., on behalf of Wiggins Farms, submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 33,133 pounds.

v.    On or about October 30, 2008, JAMES T WIGGINS, JR., on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the total amount of $197,094.00.

37

vi.     On or about November 5, 2008, the conspirators applied $197,094.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

t.  2008 Tobacco Crop Production - Sales v. Reported

i.      Between August 12, 2008, and October 6, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 691,369 pounds of tobacco to Phillip Morris USA and PMI. Of the tobacco sold, 151,081 pounds of tobacco was sold in the name of Wiggins Farms at PMI.

ii.     Between September 29, 2008, and October 1, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross tobacco production of 350,976 pounds from 362.05 acres of farmland.

u.  2008 Soybeans Crop - Lenoir County

i.      On or about December 30, 2008, "B.W." submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 175.2 bushels.

ii.     On or about January 7, 2009, "B.W." caused to be issued an insurance indemnity payment in the total amount of $11,417.00.

iii.    On or about January 15, 2009, the conspirators applied $11,417.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

38

iv.     On or about December 30, 2008, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 3,112.9 bushels.

v.     On or about January 7, 2009, SCOTT WIGGINS was issued an insurance indemnity payment in the amount of $64,473.00.

vi.     On or about January 15, 2009, the conspirators applied the $64,473.00 insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

vii.     On December 30, 2008, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 3,088.8 bushels.

viii.     On or about January 7, 2009, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an insurance indemnity payment in the total amount of $40,848.00.

ix.     On or about January 15, 2009, the conspirators applied $40,848.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

39

### v.   2008 Soybeans Crop - Wayne County

     i.    On or about December 30, 2008, "B.W." submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 630.3 bushels.

     ii.    On or about January 7, 2009, "B.W." caused to be issued an insurance indemnity payment in the total amount of $12,341.00.

     iii.    On or about January 15, 2009, the conspirators applied $12,341.00 of the insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

     iv.    On or about December 30, 2008, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 405.0 bushels.

     v.    On or about January 7, 2009, SCOTT WIGGINS was issued an insurance indemnity payment in the total amount of $27,768.00.

     vi.    On or about January 15, 2009, the conspirators applied the $27,768.00 insurance indemnity payment against the Wiggins Farms' loan account at AgCarolina Financial.

### w.   2008 Soybeans Crop Production – Sales v. Reported

     i.    Between November 21, 2008, and December 24, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 29,129.94 bushels of soybeans to Coharie Hog Farms.   Of the

40

soybeans sold, approximately 20,980 bushels of the soybeans were sold in the name of "J.C.". The checks from the "J.C." sales were deposited into a bank account of "M.L.W." and a Wiggins Farms' bank account.

ii.     On or about December 30, 2008, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA at total gross soybean production of 7,412.2 bushels from 968.6 acres of farmland.

x.     2009 Wheat Crop - Lenoir County

i.     On or about July 9, 2009, "B.W." submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 3,451.7 bushels.

ii.     On the following dates, "B.W." caused to be issued insurance indemnity payments in the total amount of $54,593.00, of which $41,638.00 was deposited into the Wiggins Farms account at Southern Bank and/or cashed at Southern Bank:

| Date of Transaction | Amount of Check |
|---|---|
| July 20, 2009 | $28,123.00 |
| July 20, 2009 | $12,685.00 |
| August 20, 2009 | $120.00 |
| December 14, 2009 | $710.00 |

41

iii.     On July 9, 2009, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 315.3 bushels.

iv.     On July 10, 2009, SCOTT WIGGINS caused an insurance indemnity payment in the total amount of $8,184.00 to be applied by the insurance company to offset the premium owed by the producer.

y.     2009 Wheat Crop - Wayne County

i.     On or about July 9, 2009, "B.W." submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 929.4 bushels.

ii.     On or about July 13, 2009, "B.W." caused to be issued an insurance indemnity payment in the total amount of $19,676.00.

iii.     On or about July 20, 2009, the conspirators caused to be deposited the $19,676.00 insurance indemnity check into the Wiggins Farms' account at Southern bank.

iv.     On or about July 9, 2009, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 860.6 bushels.

v.     On or about July 10, 2009, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $19,333.00.

42

vi.    On or about July 20, 2009, the co-conspirators caused to be deposited $17,820.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

vii.    On or about July 9, 2009, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 1995.4 bushels.

viii.    On or about July 10, 2009, James T. Wiggins, on behalf of Wiggins Farms, was issued an insurance indemnity payment in the amount of $13,781.00.

ix.    On or about July 20, 2009, the co-conspirators caused to be deposited $10,875.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

z.    2009 Wheat Crop - Greene County

i.    On or about July 9, 2009, "B.W." submitted a crop insurance claim in Greene County reporting gross wheat sales in the amount of 112.0 bushels.

ii.    On or about July 10, 2009, "B.W." caused to be issued an insurance indemnity payment in the total amount of $751.00.

iii.    On or about July 10, 2009, the co-conspirators caused to be deposited the $751.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

43

aa. *2009 Wheat Crop* Production – *Sales v. Reported*

i.     James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 42,797.02 bushels of wheat to Coharie Hog Farms. Of the wheat sold, approximately 31,492.35 bushels of the wheat were sold in the name of "J.C." The checks for the "J.C." sales were deposited into a Wiggins Farms, Inc. bank account.

ii.     On or about July 9, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA their total gross wheat production of 11,664.4 bushels from 1,053 acres of farmland.

bb.   2009 Corn Crop - Lenoir County

i.     On or about December 23, 2009, "B.W." submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 5,048.0 bushels.

ii.     On or about January 1, 2010, "B.W." caused to be issued an insurance indemnity payment in the total amount of $6,656.00.

iii.     On or about January 8, 2010, the co-conspirators caused to be deposited the $6,656.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

cc.   2009 Corn Crop - Wayne County

i.     On or about December 23, 2009, "B.W." submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 13,796.1 bushels.

ii.     On or about January 1, 2010, "B.W." caused to be issued an insurance indemnity payment in the amount of $89,149.00.

iii.    On or about January 8, 2010, the co-conspirators caused to be deposited the $89,149.99 indemnity payment into the Wiggins Farms' account at Southern Bank.

dd.  *2009 Corn Crop Production – Sales v. Reported*

i.      Between September 22, 2009, and October 13, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 217,757.91 bushels of corn to Coharie Hog Farms, Goldsboro Milling Company, and J.C. Howard Farms, Inc.   Of the corn sold, approximately 111,590.2 bushels of the corn were sold in the name of "J.C.".   The checks from these sales were cashed or deposited into Wiggins Farms bank account at Southern Bank. Of the corn sold, 4,669.70 bushels of corn were sold in the name of JBS Farms.

ii.     On or about December 23, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross corn production of 161,334.1 bushels from 1,401.3 acres of farmland.

ee.  2009 Tobacco Crop - Lenoir County

i.      On or about October 21, 2009, "B.W." submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 64,662 pounds.

45

ii.  On or about January 11, 2010, "B.W." caused to be issued an insurance indemnity payment in the total amount of $105,301.00.

iii.  On or about January 20, 2010, the co-conspirators caused to be deposited the $105,301.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

iv.  On or about October 21, 2009, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 53,145 pounds.

v.  On or about December 15, 2009, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $227,144.00 which was reimbursed by RMA.

vi.  On or about December 18, 2009, the co-conspirators caused to be deposited $194,140.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

vii.  On or about October 21, 2009, James T. Wiggins, on behalf of Wiggins Farms, Inc., submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 47,809 pounds.

viii.  Between on or about December 15, 2009, and March 17, 2010 James T. Wiggins, on behalf of Wiggins Farms, Inc. caused to be issued insurance indemnity payments in the total amount of $183,563.00 which was reimbursed by RMA.

ix.   On or about December 18, 2009, the co-conspirators caused to be deposited $164,648.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

x.   On or about April 2, 2010, the co-conspirators caused to be deposited $210.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

ff.   2009 Tobacco Crop - Wayne County

i.   On or about October 21, 2009, "B.W." submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 43,219 pounds.

ii.   On or about November 18, 2009, "B.W." caused to be issued an insurance indemnity payment in the total amount of $316,052.00 which was reimbursed by RMA.

iii.   On or about November 23, 2009, the co-conspirators caused to be deposited $254,967.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

iv.   On or about January 20, 2010, and March 10, 2010, the co-conspirators caused to be deposited an additional $1,275.00 and $130.00 of the indemnity payment into the Wiggins Farms' account at Southern Bank.

v.   On or about October 21, 2009, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 39,402 pounds.

47

vi.    On or about December 15, 2009, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $289,144.00 which was reimbursed by RMA.

vii.    On or about December 18, 2009, the co-conspirators caused to be deposited the $289,144.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

gg.    2009 Tobacco Crop Production – Sales v. Reported

i.    Between August 4, 2009, and November 4, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 1,285,346 pounds of tobacco. Of the tobacco sold, 67,778 pounds of tobacco was sold in the name of Wiggins Farms, Inc. to Calhoun Farms and 79,233 pounds was sold in the name of Wiggins Farms to a farmer with initials "C.E.". Of the tobacco sold, an additional 751,348 pounds of tobacco was sold to PMI in the names of "B.W." and SCOTT WIGGINS.

ii.    On or about October 21, 2009, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross tobacco production of 248,237 pounds from 519.51 acres of farmland.

hh.    2009 Soybeans Crop - Lenoir County

i.    On or about February 19, 2010, "B.W." submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 1,129.6 bushels.

48

ii. On or about March 3, 2010, "B.W." caused to be paid an insurance indemnity payment in the total amount of $34,041.00 which was reimbursed by RMA.

iii. On or about March 10, 2010, the co-conspirators caused to be deposited the $34,041.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

iv. On or about February 19, 2010, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 338.6 bushels.

v. On or about February 26, 2010, SCOTT WIGGINS caused to be paid an insurance indemnity payment in the total amount of $19,576.00 which was reimbursed by RMA.

vi. On or about March 4, 2010, the co-conspirators caused to be deposited the $19,576.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

ii. 2009 Soybeans Crop - Wayne County

i. On or about February 19, 2010, "B.W." submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 481.8 bushels.

ii. On or about February 26 2010, "B.W." caused to be paid an insurance indemnity payment in the total amount of $29,219.00 which was reimbursed by RMA.

49

iii.    On or about March 4, 2010, the co-conspirators caused to be deposited the $29,219.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

iv.    On or about February 19, 2010, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 440.5 bushels.

v.    On or about February 26, 2010, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $20,836.00.

vi.    On or about March 4, 2010, the co-conspirators caused to be deposited the $20,836.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

vii.    On or about February 19, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc. submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 472.9 bushels.

viii.    On or about February 26, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc., caused to be paid an insurance indemnity payment in the total amount of $44,357.00 which was reimbursed by RMA.

ix.    On or about March 4, 2010, the co-conspirators caused to be deposited the $44,357.00 indemnity payment into the Wiggins Farms' account at Southern Bank.

50

jj. <u>2009 Soybean Crop Production - Sales v. Reported</u>

i. Between November 12, 2009, and January 10, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 33,414.96 bushels of soybeans. Of the soybeans sold, approximately 30,402.37 bushels of the soybeans were sold in the name of JBS FARMS.

ii. Between February 19, 2010, and February 20, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross soybean production of 2,963.4 bushels from 876.6 acres of farmland.

kk. <u>2010 Wheat Crop - Greene County</u>

i. On or about June 24, 2010, "B.W." submitted a crop insurance claim in Greene County reporting gross wheat sales in the amount of 75.0 bushels.

ii. Between on or about June 30, 2010, and July 9, 2010, "B.W." caused to be issued insurance indemnity payments in the total amount of $2,087.00, which were deposited into his account at Southern Bank.

ll. <u>2010 Wheat Crop - Lenoir County</u>

i. On or about June 24, 2010, "B.W." submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 390.0 bushels.

51

ii.     On or about June 30, 2010, "B.W." caused to be issued an insurance indemnity payment in the total amount of $6,809.00, of which $3,193.00 was deposited into his account at Southern Bank.

iii.     On or about July 9, 2010, "B.W." caused to be issued an additional insurance indemnity payment in the total amount of $308.00, which was deposited into his account at Southern BANK.

iv.     On June 24, 2010, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 45.0 bushels.

v.     On or about July 9, 2010, SCOTT WIGGINS caused to be issued an insurance indemnity payment in the total amount of $2,184.00 of which $36.00 was deposited into his account at Southern Bank.

vi.     Between on or about April 19, 2010 and June 24, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc., submitted crop insurance claims in Lenoir County reporting gross wheat sales in the amount of 1,020.7 bushels.

vii.     On or about May 27, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc., caused to be issued an insurance indemnity payment in the total amount of $35,835.00, of which

52

$5,081.00 was deposited into the Wiggins Farms' account at SOUTHERN BANK.

viii.    On or about the following dates, James T. Wiggins, on behalf of Wiggins Farms, Inc., caused to be issued insurance indemnity payments in the total amount of $24,565.00, which were deposited into the Wiggins Farms' account at SOUTHERN BANK as follows:

| Date of Transaction | Amount of Check |
|---|---|
| July 6, 2010 | $18,719.00 |
| July 9, 2010 | $450.00 |
| July 9, 2010 | $6.00 |
| July 9, 2010 | $124.00 |
| July 23, 2010 | $5,266.00 |

mm.   2010 Wheat Crop - Wayne County

i.    On June 24, 2010, "B.W." submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 100.0 bushels.

ii.    Between on or about July 2, 2010, and July 9, 2010, "B.W." caused to be paid insurance indemnity payments in the total amount of $4,603 which were deposited into his account at SOUTHERN BANK.

53

iii.    On June 24, 2010, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 145.0 bushels.

iv.    On or about July 2, 2010, SCOTT WIGGINS caused to be paid an indemnity payment of $14,553.00, of which $14,298.00 was deposited into his account at SOUTHERN BANK.

v.    On or about June 24, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc., submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 720.0 bushels.

vi.    Between on or about May 27, 2010, and July 10, 2010, James T. Wiggins, on behalf of Wiggins Farms, Inc., caused to be issued insurance indemnity payments in the total amount of $18,883.00.

vii.    On or about the following dates, James T. Wiggins, on behalf of Wiggins Farms, Inc., caused portions of the indemnity payments to be deposited into the Wiggins Farms account at SOUTHERN BANK as follows:

| Date of Transaction | Amount of Check |
|---|---|
| June 9, 2010 | $2,473.00 |
| June 30, 2010 | $9,852.00 |
| July 2, 2010 | $2,899.00 |
| July 9, 2010 | $213.00 |

| July 9, 2010 | $66.00 |
|---|---|

nn. 2010 Wheat Crop Production – Sales v. Reported

i.      Between May 27, 2010 and June 5, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold approximately 15,697.42 bushels of wheat to Walstonburg Milling in the name of JBS Partners.

ii.      On or about June 24, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross wheat production of 2,495.7 bushels from 1,014.8 acres of farmland.

oo. 2010 Corn Crop - Lenoir County

i.      On September 29, 2010, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 490.2 bushels.

ii.      On or about November 4, 2010, SCOTT WIGGINS caused an indemnity payment in the amount of $63,343.00 to be applied as an offset to the premium owed to the insurance company.

pp. 2010 Corn Crop - Wayne County

i.      On September 29, 2010, "B.W." submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 17.8 bushels.

55

ii.     On or about October 25, 2010, "B.W." caused an indemnity payment in the total amount of $5,003.00 to be applied as an offset to the premium owed to the insurance company.

iii.     On September 29, 2010, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 10,097.9 bushels.

iv.     On November 10, 2010, SCOTT WIGGINS caused to be issued a total indemnity payment of $204,676.00, of which $185,379 which was deposited into his account at Southern Bank.

qq.     2010 Corn Crop Production – Sales v. Reported

i.     Between August 11, 2010, and September 15, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 161,342.09 bushels of corn, of which approximately 31,224.99 bushels of corn were sold in the name of MC Farms and JBS Farms.

ii.     On or about September 29, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross corn production of 91,170.92 bushels from 1,537.2 acres of farmland.

rr.     2010 Tobacco Crop – Lenoir County

i.     On December 3, 2010, "B.W." submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 68,666 pounds.

56

ii.    On or about February 3, 2011, "B.W." cause to be issued a total indemnity payment of $100,945.00, of which $95,793 was deposited into his account at Southern Bank.

iii.    On December 3, 2010, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 83,978 pounds.

iv.    On or about January 14, 2011, SCOTT WIGGINS caused to be issued an indemnity payment of $29,563 which was deposited into his account at Southern Bank.

v.    On December 3, 2010, James T Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 62,607 pounds.

vi.    On or about January 14, 2011, James T. Wiggins caused to be issued an indemnity payment of $5,503 was deposited into the Wiggins Farm's account at Southern Bank.

ss.    2010 Tobacco Crop - Wayne County

i.    On December 3, 2010, "B.W." submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 10,619 pounds.

ii.    On January 26, 2011, "B.W." caused to be issued an indemnity payment of $184,423 which was deposited into his account at Southern Bank.

57

iii.     On December 3, 2010, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 17,322 pounds.

iv.     On or about January 14, 2011, SCOTT WIGGINS caused to be issued an indemnity payment of $83,031 which was deposited into his account at Southern Bank.

v.     On December 3, 2010, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 25,878 pounds.

vi.     On or about January 26, 2011, James T. Wiggins caused to be issued an indemnity payment of $108,994 which was deposited into the Wiggins Farms' account at Southern Bank.

tt.   2010 Tobacco Crop Production – Sales v. Reported

i.     Between August 6, 2010, and September 29, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 630,840 pounds of tobacco, of which 302,017 pounds of tobacco was sold to PMI in the names of "B.W." and SCOTT WIGGINS. An additional 46,400 pounds of tobacco was sold in the name of Wiggins Farms to Elvington Farms.

ii.     On or about December 21, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross tobacco production of 269,070 pounds from 615.35 acres of farmland.

uu.    2010 Soybeans Crop - Greene County

i.    On December 31, 2010, "B.W." submitted a crop insurance claim in Greene County reporting gross soybean sales in the amount of 39.4 bushels.

ii.    On or about January 7, 2011, "B.W." caused to be issued a total indemnity payment of $4,809 which was used to offset premiums.

vv.    2010 Soybeans Crop - Lenoir County

i.    On December 31, 2010, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 36.7 bushels.

ii.    On or about January 11, 2011, SCOTT WIGGINS caused to be issued a total indemnity payment of $2,548 which was deposited into his account at Southern Bank.

iii.    On December 31, 2010, "B.W." submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 128.7 bushels.

iv.    On or about January 7, 2011, "B.W." caused to be issued a total indemnity payment of $10,487 which was used by the insurance company to offset the premium owed by the producer.

v.    On December 31, 2010, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Lenoir

County reporting gross soybean sales in the amount of 940.1 bushels.

vi.     On or about January 7, 2011, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued a total indemnity payment in the amount of $76,926 of which $33,120.00 was deposited into the Wiggins Farms' account at Southern Bank.

### ww.   2010 Soybeans Crop - Wayne County

i.     On December 31, 2010, "B.W." submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 59.5 bushels.

ii.     On or about January 7, 2011, "B.W." caused to be issued a total indemnity payment in the amount of $6,383.00, which was used by the insurance company to offset the premium owed by the producer.

iii.     On December 31, 2010, SCOTT WIGGINS submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 582.1 bushels.

iv.     On or about January 11, 2011, SCOTT WIGGINS caused to be issued an indemnity payment of $16,187 which was deposited into his account at Southern Bank.

v.     On December 31, 2010, James T. Wiggins, on behalf of Wiggins Farms, submitted a crop insurance claim in Wayne

County reporting gross soybean sales in the amount of 159.1 bushels.

  vi.  On or about January 11, 2011, James T. Wiggins, on behalf of Wiggins Farms, caused to be issued an indemnity payment of $49,659.00 which was deposited into his account at Southern Bank.

  xx. 2010 Soybeans Crop Production – Sales v. Reported

  i.  Between November 12, 2010, and December 15, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 13,661.83 bushels of soybeans, of which approximately 10,301.67 bushels of the soybeans were sold in the name of "J.C.". The checks from these sales were deposited into the Wiggins Farms' account at Southern Bank.

  ii.  On or about December 31, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross soybean production of 1,945.6 bushels from 1,016.1 acres of farmland.

  yy. 2011 Wheat Crop - Greene County

  i.  On July 11, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Greene County reporting gross wheat sales in the amount of 579.3 bushels.

  ii.  On or about July 13, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, caused to be issued a total indemnity

61

payment in the amount of $1,327.00 which was used by the insurance company to offset the premium owed by the producer.

zz. 2011 Wheat Crop - Lenoir County

i. On July 14, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 26,156.7 bushels.

ii. On or about July 18, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, caused to be issued a total indemnity payment of $12,175.00 in the name of JSBF Partnership, of which $11,825.00 was deposited into the Wiggins Farms' account at Southern Bank on July 21, 2011.

iii. On July 11, 2011, "B.W." submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 174.3 bushels.

iv. On or about July 15, 2011, "B.W." caused to be issued a total indemnity payment of $4,686 which was deposited into his account at Southern Bank.

v. On July 11, 2011, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross wheat sales in the amount of 2,250.6 bushels.

vi. On or about July 12, 2011, SCOTT WIGGINS caused to be issued an indemnity payment in the total amount of

$2,752.00 which was used by the insurance company to offset the premium owed by the producer.

### aaa. 2011 Wheat Crop - Wayne County

i.      On July 14, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 1,358.2 bushels.

ii.      Between on or about March 15, 2011, and August 17, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, caused to be issued insurance indemnity payments in the total amount of $40,560.00 in the name of JSBF Partnership, of which $26,653.00 was deposited into the Wiggins Farms' account at Southern Bank on March 22, 2011.

iii.      On July 11, 2011, "B.W." submitted a crop insurance claim in Wayne County reporting gross wheat sales in the amount of 267.4 bushels.

iv.      On or about July 13, 2011, "B.W." caused to be issued a total indemnity payment of $3,885.00 of which $2,107.00 was deposited into his account at Southern Bank.

### bbb. 2011 Wheat Crop Production – Sales v. Reported

i.      Between May 25, 2011, and June 6, 2010, James T. Wiggins, SCOTT WIGGINS, and "B.W." sold more than 42,116.24 bushels of wheat to Walstonburg Milling and Murphy Brown.

63

ii.     Between July 11, 2011, and July 14, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W." reported to RMA a total gross wheat production of 34,026.5 bushels from 805.9 acres of farmland.

### ccc. 2011 Corn Crop - Greene County

i.     On November 16, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Greene County reporting gross corn sales in the amount of 953.6 bushels.

ii.     On or about December 22, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, caused to be issued an insurance indemnity payment in the total amount of $8,594.00 in the name of JSBF Partnership. This check was deposited into JSBF Partnership's account at Southern Bank on December 29, 2011.

### ddd. 2011 Corn Crop - Lenoir County

i.     On November 17, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 9,579.9 bushels.

ii.     On or about December 27, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, caused to be issued an insurance indemnity payment in the total amount of $237,454.00. The corn insurance indemnity payment was combined with insurance payments due for tobacco and soybeans crops, less premiums, resulting in payments totaling $241,368, of which $240,539.00 was deposited

into JSBF Partnership's account at Southern Bank on December 29, 2011.

      iii.     On November 16, 2011, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 593.3 bushels.

      iv.     On or about December 27, 2011, SCOTT WIGGINS caused to be issued an insurance indemnity payment for corn in the total amount of $8,192.00. The corn insurance indemnity payment was combined with insurance payments due for tobacco crop, less premiums, resulting in payments totaling $43,482.30, which was deposited into SCOTT WIGGIN's farm account at Southern Bank on December 29, 2011.

      eee. <u>2011 Corn Crop - Wayne County</u>

      i.     On November 17, 2011, SCOTT WIGGINS, on behalf of JSBF Partnership, submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 5,531.4 bushels.

      ii.     On or about December 27, 2011, SCOTT WIGGINS on behalf of JFSF Partnership caused to be issued an insurance indemnity payment for corn in the total amount of $227,158.00. The corn insurance indemnity payment was combined with insurance payments due for tobacco and soybean crops, less premiums, resulting in payments totaling $383,082.64, which was applied against the company's account at Harvey's Fertilizer and Gas Co.

### fff. 2011 Corn Production – Sales v. Reported

i.      Between August 1, 2011, and September 13, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W" sold more than 152,620.83 bushels of corn, of which approximately 87,116.45 bushels of the corn were sold in the name of LA Farms, McFarms, Inc. and JSBS Farms.

ii.      Between November 2, 2011, and November 17, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W" reported to RMA a total corn production of 45,019.7 bushels from 1,747.6 acres of farmland.

### ggg. 2011 Tobacco Crop - Greene County

i.      On November 2, 2011, James T. Wiggins, JR., on behalf of JSBF Partnership, submitted a crop insurance claim in Greene County reporting gross tobacco sales in the amount of 8,400.0 pounds.

ii.      On or about December 16, 2011, James T. Wiggins, JR., on behalf of JSBF Partnership, caused to be an indemnity payment of $54,859.00 in the name of JSBF Partnership, which was deposited into the JSBF Partnership account at Southern Bank on December 22, 2011.

### hhh. 2011 Tobacco Crop - Lenoir County

i.      On November 2, 2011, James T. Wiggins, on behalf of JSBF Partnership, submitted a crop insurance claim in

Lenoir County reporting gross tobacco sales in the amount of 16,123.0 pounds.

    ii.    On or about December 14, 2011, James T. Wiggins, on behalf of JSBF Partnership, caused to be issued a total indemnity payment of $156,384.00 in the name of JSBF Partnership, of which $101,505.98 was applied to the Wiggins' credit account with Harvey's Fertilizer and Gas Co.

    iii.    On November 2, 2011, SCOTT WIGGINS submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 17,154 pounds.

    iv.    On or about December 27, 2011, SCOTT WIGGINS caused to be issued an indemnity payment in the total amount of $46,497.00, of which $43,482.30 was deposited into his account at Southern Bank.

### iii. 2011 Tobacco Crop - Wayne County

    i.    On November 2, 2011, James T. Wiggins, on behalf of JSBF Partnership, submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 30,712.0 pounds.

    ii.    On or about December 14, 2011, James T. Wiggins, on behalf of JSBF Partnership, caused to be issued an indemnity payment in the total amount of $161,848.00, of which

$116,288.64 was applied to the WIGGINS credit account with Harvey's Fertilizer and Gas Co.

iii.    On November 2, 2001, "B.W." submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 12,917 pounds.

iv.    On or about December 27, 2011, "B.W." caused to be issued an indemnity payment in the total amount of $79,061.00, of which $75,066.66 was deposited into his account at Southern Bank on December 29, 2011.

jjj. 2011 Tobacco Crop Production – Sales v. Reported

i.    Between August 18, 2011, and October 12, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W" sold more than 278,563 pounds of tobacco, of which 33,181 pounds was sold to a farmer with initial "M.J." in the name of LA Farms, 34,851 pounds was sold to Sharp Farms Inc. in the name of LA Farms, and 134,827 pounds was sold to Squire Brothers Farms in the name of LA Farms.

ii.    Between November 2, 2011, and November 7, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W" reported to RMA a total gross tobacco production of 145,469 pounds (harvested and unharvested) from 497.5 acres of farmland.

kkk. 2011 Soybean Crop - Greene County

i.    On February 17, 2012, James T. Wiggins, on behalf of JSBF Partnership, submitted a crop insurance claim in

Greene County reporting gross soybean sales in the amount of 367.6 bushels.

  ii.  On or about March 7, 2012, James T. Wiggins, on behalf of JSBF Partnership, caused to be issued an indemnity payment in the total amount of $10,601.00 in the name of JSBF Partnership, of which $10,509.00 was deposited into the JSBF Partnership account at Southern Bank on March 8, 2012.

  lll. 2011 Soybean Crop - Lenoir County

  i.  On February 17, 2012, James T. Wiggins, on behalf of JSBF Partnership, submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 11,173.6 bushels.

  ii.  On or about March 6, 2012, James T. Wiggins, on behalf of JSBF Partnership, caused to be issued an indemnity payment in the total amount of $7,287.00 in the name of JSBF Partnership. This check was deposited into the JSBF Partnership account at Southern Bank on March 8, 2012.

  iii.  On February 17, 2012, "B.W." submitted a crop insurance claim in Lenoir County reporting gross soybean sales in the amount of 80.0 bushels.

  iv.  On or about February 27, 2012, "B.W." caused to be issued an indemnity payment in the total amount of $5,801.00

which was deposited into the Wiggins Farms' account at Southern Bank on February 29, 2012.

### mmm. 2011 Soybean Crop - Wayne County

i.   On February 27, 2012, James T. Wiggins, on behalf of JSBF Partnership, submitted a crop insurance claim in Wayne County reporting gross soybean sales in the amount of 1,517.3 bushels.

ii.   On or about March 2, 2012, James T. Wiggins, on behalf of JSBF Partnership, caused to be issued an indemnity payment in the total amount of $39,804.00 in the name of JSBF Partnership.  This check was deposited into the JSBF Partnership account at Southern Bank on March 6, 2012.

### nnn. 2011 Soybean Crop Production - Sales v. Reported

i.   Between November 3, 2011, and November 22, 2011, James T. Wiggins, SCOTT WIGGINS, and "B.W" sold more than more than 19,157.36 bushels of soybeans, of which more than 11,848.38 bushels of the soybeans were sold in the name of LA FARMS, and 64.67 bushels of soybeans were sold in the name of "B.W."'s daughter. This production was not included in the production reported to RMA.

ii.   Between on or about February 17, 2012, and April 10, 2012, James T. Wiggins, SCOTT WIGGINS, and "B.W" reported

to RMA their total gross soybean production of 16,958.5 bushels from 801.8 acres of farmland.

iii.    James T. Wiggins, SCOTT WIGGINS, and "B.W" reported to RMA that 1,360.5 bushels of soybeans produced on the indemnified acreage were sold at Johnson Grain. Johnson Grain is a fictitious entity.

## "New Producer" Fraud Scheme

ooo. On April 14, 2011, James T. Wiggins submitted an Actual Production History Database form for Lenoir County to NAU Country Insurance Company indicating that he was a "New Producer." James T. Wiggins failed to disclose his prior interest and participation in the company WIGGINS FARMS and JSBF Partnership in order to secure a new producer guarantee status for himself.

ppp. On November 2, 2011, James T. Wiggins submitted a crop insurance claim in Lenoir County reporting gross tobacco sales in the amount of 33,132.0 pounds.

qqq. On November 17, 2011, James T. Wiggins submitted a crop insurance claim in Lenoir County reporting gross corn sales in the amount of 20,517.5 bushels.

rrr. On or about December 27, 2011, James T. Wiggins caused to be issued a joint insurance indemnity payment, less premiums, in the amount of $106,620 for his 2011 corn and tobacco claims. The indemnity payment calculation included a premium

credit of $20,072 based upon the claimed new producer status. This check was deposited into the Wiggins Farm account at Southern Bank on December 29, 2011.

   sss. On April 14, 2011, James T. Wiggins submitted an Actual Production History Database form for Wayne County to NAU Country Insurance Company indicating that he was a "New Producer." James T. Wiggins failed to disclose his prior interest and participation in the company Wiggins Farms and JSBF Partnership in order to secure a new producer guarantee status for himself.

   ttt. On November 2, 2011, James T. Wiggins submitted a crop insurance claim in Wayne County reporting gross tobacco sales in the amount of 27,031.0 pounds.

   uuu. On November 17, 2011, James T. Wiggins submitted a crop insurance claim in Wayne County reporting gross corn sales in the amount of 7,844.0 bushels.

   vvv. On or about December 27, 2011, James T. Wiggins caused to be issued a total insurance indemnity payment, less premiums, in the amount of $136,936.50 for his 2011 corn and tobacco claims. The indemnity payment calculation included a premium credit of $21,443 based upon the claimed new producer status. This check was applied against their account at Harvey's Fertilizer and Gas Co.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO

1. Paragraphs 1 through 63, and 66 through 67 of Count One above are incorporated by reference as if fully set forth herein.

2. Beginning in or about 2007, the exact date being unknown, and continuing up to and including the date of this Criminal Information, in the Eastern District of North Carolina and elsewhere, JAMES SCOTT WIGGINS, defendant herein, aiding and abetting others, did knowingly make false statements and reports for the purpose of influencing in any way the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, insurance agreement, application for insurance and a guarantee, and any change or extension of any of the same, by renewal, deferment of action and otherwise, in violation of Title 18, United States Code, Sections 1014 and 2.

COUNT THREE

1. Paragraphs 1 through 63, and 66 through 67 of Count One above are incorporated by reference as if fully set forth herein.

2. Beginning in or about 2007, the exact date being unknown, and continuing up to and including the date of this Criminal Information, within the Eastern District of North Carolina and elsewhere, JAMES SCOTT WIGGINS, defendant herein, in a matter

within the jurisdiction of the Farm Service Agency, an agency within the United States Department of Agriculture, a department of the executive branch of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations; that is, JAMES SCOTT WIGGINS provided production data he knew to be false in connection with an application for disaster payments and that false production data caused him to receive monies to which he was not entitled, all in violation of Title 18, United States Code, Section 1001.

### COUNT FOUR

1.    Paragraphs 1 through 63, and 66 through 67 of Count One above are incorporated by reference as if fully set forth herein.

2.    Beginning in or about 2007, the exact date being unknown, and continuing up to and including the date of this Criminal Information, in the Eastern District of North Carolina and elsewhere, JAMES SCOTT WIGGINS, defendant herein, did combine, conspire, confederate and agree with others known and unknown to the United States Attorney to commit the following offenses against the United States: that is, to knowingly engage in a monetary transaction within the United States in criminally derived property with a value greater than $10,000, which was in fact derived from a specified unlawful activity, specifically, violations of 18 U.S.C. § 1014, 18 U.S.C. § 1341, and 18 U.S.C. §

1343, in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1957.

All in violation of Title 18, United States Code, Sections 1956(h) and 1957.

FORFEITURE NOTICE

The defendant is given notice of the provisions of 18 U.S.C. §§ 981(a)(1)(C), and 982(a)(1) & (a)(2)(A) that all of his interest in all property specified herein is subject to forfeiture.

As a result of the foregoing offenses as alleged in Counts One through Four of this Criminal Information, the defendant shall forfeit to the United States any and all property constituting, or derived from, any proceeds said defendant obtained directly or indirectly as a result of the said offenses.

Furthermore, as a result of the foregoing offenses as alleged in Counts One through Four of this Criminal Information, the defendant shall forfeit to the United States all property involved in such offenses.

The forfeitable property includes, but is not limited to:

(1)   personal property;

(2)   real property; and

(3)   currency in the amount of $2,073,754, representing the gross proceeds of offenses stated in this Criminal Information.

75

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1)   cannot be located upon the exercise of due diligence;

(2)   has been transferred or sold to, or deposited with, a third person;

(3)   has been placed beyond the jurisdiction of the court;

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property all in accordance with 18 U.S.C. §§ 981 and 982.

ROBERT J. HIGDON, JR.
United States Attorney

By: _____
BANUMATHI RANGARAJAN
Assistant United States Attorney
Criminal Division

76